IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION


JAMES B. MITCHELL, JASON M.
FEDELE, and TIFFNEY R. FEDELE                                          PLAINTIFFS

V.                         CASE NO. 5:14-CV-05176

CONNER ELDRIDGE, DEBORAH F.
GROOM, TRACY A. TRIPLETT, KYRA E.
JENNER, CANDACE L. TAYLOR,
KENNETH ELSER, CHRISTOPHER
PLUMLEE, JANET L. PLOUDRE, GRANT
EDWARDS, RONALD SCAMARDO,
BETH PHILLIPS, UNITED STATES OF
AMERICA, and UNKNOWN U.S. MARSHALS                                     DEFENDANTS


**OPINION AND ORDER**

Currently before the Court are Separate Defendants Conner Eldridge, Kyra E. Jenner, Tracy A. Triplett, Christopher Plumlee, Kenneth Elser, Deborah F. Groom, and Candace L. Taylor's Motions to Dismiss (Docs. 36, 38, 40, 42, 44, 46, and 48) and Briefs in Support (Docs. 37, 39, 41, 43, 45, 47, and 49); Separate Defendants Conner Eldridge, Tracy A. Triplett, Kyra E. Jenner, and Christopher Plumlee's Motion to Substitute the United States for the Individual Named Defendants (Doc. 34) and Brief in Support (Doc. 35); and Defendants' Motion for Entry of Dismissal as to Tiffney R. Fedele (Doc. 61). Also before the Court are Separate Plaintiff Mitchell's Response in Opposition to Defendants' Motions to Dismiss (Doc. 55) and Plaintiff Jason M. Fedele's Response in Opposition to Defendants' Motion to Dismiss (Doc. 59). Defendants' Reply to the Motion to Substitute (Doc. 60) and Defendants' Reply to the Motion to Dismiss (Doc. 62) were filed without prior permission from the Court, and will not be considered.

For the reasons described herein, Defendants' Motions to Dismiss (Docs. 36, 38, 40, 42, 44, 46, and 48) are **GRANTED**, and Defendants' Motion to Substitute (Doc. 34) and Defendants' Motion for Entry of Dismissal (Doc. 61) are **MOOT**.

### I. Background

Plaintiffs bring this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that United States Attorney Conner Eldridge, and Assistant United States Attorneys Kyra E. Jenner, Tracy A. Triplett, Christopher Plumlee, Kenneth Elser, Deborah F. Groom, Candace L. Taylor, and Beth Phillips ("Prosecutors") conspired with Internal Revenue Service ("IRS") special agent Janet L. Ploudre, and IRS task force officers Grant Edwards and Ronald Scamardo ("IRS Investigators") in order to bring to the grand jury the false charge of "enticing minors to engage in prostitution" in violation of 18 U.S.C. § 2422(b) so that the Court would detain Plaintiffs without bail. Plaintiffs allege that because § 2422(b) carried a ten year mandatory minimum sentence, the Court denied Plaintiffs bail. Plaintiffs also assert that the Prosecutors coerced several witnesses and co-conspirators to falsely accuse Plaintiffs of knowingly hiring minor escorts. Plaintiffs point out that they did not plead guilty to the charge of enticing minors to engage in prostitution, as that count was dismissed at sentencing.

Plaintiffs further allege that on June 17, 2011, after Plaintiff Mitchell was sentenced, Separate Defendants Eldridge, Triplett, Jenner, and Plumlee issued a press release that stated in part: "This case involved a large scale prostitution ring that exploited numerous individuals including minors. Exploitation of this nature takes a tremendous toll on the lives

of the individuals involved. In our office, we are committed to investigating these terrible crimes." (Doc. 14, p. 32). Plaintiffs contend that the press release also stated that Mitchell was sentenced to 126 months imprisonment on "Conspiracy to use an Interstate Facility to Distribute Proceeds from Prostitution." *Id*. A nearly identical press release was given subsequent to Jason and Tiffney Fedele's sentencings. Plaintiffs maintain that these press releases are false, as Plaintiffs neither promoted prostitution, nor exploited minors. As compensation, Plaintiffs seek compensatory damages in the amount of $1,000,000 and punitive damages in the amount of $4,000,000 for each Plaintiff.

The Prosecutors seek dismissal under several theories, including absolute immunity and/or qualified immunity, and no *respondeat superior* liablity. Primarily, they argue that conduct surrounding the prosecution of Plaintiffs is protected by absolute immunity, and that Plaintiffs' acceptance of the presentence investigation report ("PSR") without objections at sentencing estops Plaintiffs from denying that at least one minor was involved in prostitution. The Prosecutors also assert that they are entitled to absolute immunity, or at least qualified immunity, for press releases concerning this matter.

In response, Separate Plaintiff Mitchell argues, among other things, that the Prosecutors acted as investigators, thus removing the protection of absolute immunity, and that statements to the press are not afforded absolute immunity.

As Separate Defendants Eldridge, Jenner, Triplett, Plumlee, Elser, Groom, and Taylor, can be dismissed under theories of absolute or qualified immunity, it is unnecessary to address the other issues presented in the parties' briefs.

## II.  Legal Standard

In ruling on a motion to dismiss, the Court "accepts as true all of the factual allegations contained in the complaint" and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief.  *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)).  All reasonable inferences from the complaint must be drawn in favor of the plaintiff. *Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). Nevertheless, the complaint must include facts sufficient to show that the plaintiff is entitled to relief.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted).  Where the facts presented in the complaint do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not shown "that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings. *See* Fed. R. Civ. P. 12(d). The Court may, however, consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings, *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697, n.4 (8th Cir. 2003), and may also consider public records, *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007).

### III.  Discussion

### A.  Prosecutorial Immunity

Plaintiffs allege that the Prosecutors conspired with the IRS Investigators in order to coerce witnesses to provide false statements that Plaintiffs enticed minors into prostitution, which resulted in the Court's denial of bail.  Specifically, the Complaint alleges the following:

> Defendants . . . conspired and collaborated amongst one another to deliberately bring forth false charges . . . for which no just probable cause existed to indict any or all of the Plaintiffs for two (2) counts of violating 18 U.S.C. § 2422(b) "enticing a minor to engage in prostitution" which carries a ten-year mandatory minimum sentence (if convicted) for the sole purpose of having the Court detain each of the Plaintiffs with no bail throughout the duration of the Defendants prosecuting them, and ... the Plaintiffs were sentenced on lesser offenses. (Doc. 14, para. 3).

The Prosecutors argue that, even if the above allegations are taken as true, they are entitled to absolute immunity for this conduct.  "The question of whether absolute or qualified immunity applies depends on whether the prosecutor's acts were prosecutorial, investigatory or administrative in nature." *Anderson,* 327 F.3d at 768. Prosecutors are entitled to absolute immunity from civil liability under § 1983, and therefore a *Bivens* action, when they are engaged in prosecutorial functions that are "intimately associated with the judicial process." *Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) (quoting *Anderson,* 327 F.3d at 768).  Thus, if the prosecutors acted within the scope of their duties

in initiating and pursuing a criminal prosecution, prosecutors act "quasi-judicially" and therefore enjoy the same absolute immunity as judges. *Imbler v. Pachtman*, 424 U.S. 410, 437 (1976). However, "[n]ot all of an advocate's work is done in the courtroom. For a lawyer to properly try a case, he must confer with witnesses, and conduct some of his own factual investigation." *Reasonover v. St. Louis Cnty., Mo*., 447 F.3d 569, 579-80 (8th Cir. 2006) (citing Cook *v. Houston Post,* 616 F.2d 791, 793 (5th Cir. 1980)). *See also Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993) (finding the duties of the prosecutor as advocate for the State involve not only actions preliminary to the initiation of a prosecution, but actions apart from the courtroom). For example, investigation to secure the information necessary to the prosecutor's decision to initiate criminal proceedings is within the quasi-judicial aspect of the prosecutor's job and therefore is absolutely immune from civil suit for damages. *Williams v. Hartje*, 827 F.2d 1203, 1210 (8th Cir. 1987).

Actions connected with initiation of prosecution, even if those actions are patently improper, are immunized. *Id.* at 1208. Immunity is not defeated by allegations of malice, vindictiveness, or self-interest. *Reasonover*, 447 F.3d at 580 (internal citations omitted). Even if the Prosecutors knowingly presented false, misleading, or perjured testimony, or even if they withheld or suppressed exculpatory evidence, they are absolutely immune from suit. *Id. See also Brawer v. Horowitz*, 535 F.2d 830, 832-34 (3rd Cir. 1976) (finding the federal prosecutor was entitled to absolute immunity from allegations that he had conspired with a cooperating witness to use perjured testimony and to conceal exculpatory evidence in order to convict the plaintiff).

Plaintiffs, citing *Buckley*, argue that Defendants fabricated evidence, thus forfeiting their shield of absolute immunity. However, the Complaint does not allege any facts that would support a claim that Defendants fabricated evidence as the prosecutor did in *Buckley*. In *Buckley*, prosecutors attempted to connect the defendant to a bootprint found at the crime scene. *Id.* at 263. After consulting with several experts who could not link the defendant to the bootprint, prosecutors utilized an anthropologist who was well known for her willingness to fabricate evidence. *Id.* Importantly, the Supreme Court noted that "[a]t the time of this witness shopping the assistant prosecutors were working hand in hand with the sheriff's detectives under the joint supervision of the sheriff and state's attorney." *Id.* at 272. After an eight-month investigation, "during which the grand jury heard the testimony of over 100 witnesses, including the bootprint experts, it was still unable to return an indictment[; however,] . . . [a]lthough no additional evidence was obtained, . . . the indictment was returned [months later]." *Id.* at 264. The purpose of the actions surrounding the bootprint was to conduct an investigation, not return an indictment by the grand jury. *Id.* at 274-75. Contrary to the facts presented in *Buckley,* there is no allegation of such fabrication here.

Plaintiffs contend that the Prosecutors visited Jason Fedele in an attempt to coerce him to state that Mitchell enticed minors to engage in prostitution, that Triplett informed Jason Fedele she intended to build a case against Mitchell for knowingly hiring minors as escorts, and that the Prosecutors coerced other witnesses to make false statements as to Plaintiffs hiring minors as escorts. Plaintiffs argue that the Prosecutors did this so that Plaintiffs would be wrongfully denied bail. However, the facts before this Court reveal

otherwise.  The PSRs prepared prior to Plaintiffs' sentencings stated that they were aware that 17-year-old minors were employed in their escort service.  Plaintiffs withdrew all their objections regarding the use of minors as prostitutes, which resulted in their admission of this fact.[1]  Mitchell gave a signed statement to his attorney acknowledging that he withdrew all objections to his PSR in order to gain points for acceptance of responsibility. (Doc. 55-7).  He specifically acknowledged within this statement that he knew admitting to this fact would greatly increase his sentence, yet he chose not to contest it.

Although Plaintiffs allege that the Prosecutors acted as investigators, all of the Prosecutors' acts complained of by Plaintiffs were prosecutorial functions and are therefore protected, as interviews of witnesses and co-defendants constitute actions associated with prosecuting Plaintiffs' alleged criminal acts.  The acts of preparing, signing, and filing a criminal complaint and indictment and interviewing witnesses are prosecutorial functions, as they are advocacy on behalf of the government. *See Kalina v. Fletcher,* 522 U.S. 118, 129 (1997) (stating that "[the prosecutor's] activities in connection with the preparation and filing of two of the three charging documents-the information and the motion for an arrest warrant-are protected by absolute immunity.").  As such, Defendants are entitled to absolute immunity from liability under *Bivens* for filing charges against Defendants, even if they subsequently dropped some of the charges at sentencing, and even if Plaintiffs were

---

[1] As Plaintiffs freely cite to their PSRs in their Complaint, the Court considers them to be "embraced by the pleadings" and appropriate for discussion on this Motion to Dismiss. The PSRs and accompanying addendums are found in the record at 5:10-CR-50067-001, Doc. 74; 5:10-CR-50067-002, Doc. 80; and 5:10-CR-50067-003, Doc. 78.

denied bail. Since the Prosecutors are entitled to absolute immunity, the Court need not address whether they are entitled to qualified immunity on this issue.[2]

### B. Qualified Immunity Regarding Press Conference Statements

Plaintiffs allege that in two separate press releases, Eldridge, Jenner, Triplett, and Plumlee provided false information to the press by portraying Plaintiffs as having been convicted of enticing a minor to engage in prostitution in spite of the fact that this charge had been dismissed.

Defendants maintain that all claims should be dismissed against them because they are entitled to absolute immunity under the Westfall Act,[3] or in the alternative, qualified immunity as government employees. While statements to the media are not entitled to absolute immunity, they may be entitled to qualified immunity. "Comments to the media have no functional tie to the judicial process just because they are made by a prosecutor . . . . [as the] conduct of a press conference does not involve the initiation of a prosecution,

---

[2] Although it is difficult to discern from the allegations within the Complaint which prosecutors acted solely in a supervisory role and who was personally involved in Plaintiffs' criminal convictions, the Prosecutors actions cannot be predicated on vicarious liability either. *Respondeat superior* liability does not apply to actions brought pursuant to 42 U.S.C. § 1983 as "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft*, 129 S.Ct. at 1948. "An action under *Bivens* is almost identical to an action under section 1983, except that the former is maintained against federal officials, while the latter is against state officials." *Christian v. Crawford*, 907 F.2d 808, 810 (8th Cir. 1990).

[3] The Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly known as the Westfall Act, accords federal employees absolute immunity from common-law tort claims arising out of acts they undertake in the course of their official duties. *See* 28 U.S.C. § 2679(b)(1). The Westfall Act's core purpose is to relieve covered employees from the cost and effort of defending the lawsuit, and to place those burdens on the Government's shoulders. *Osborn v. Haley*, 549 U.S. 225, 252 (2007).

9

the presentation of the state's case in court, or actions preparatory for these functions." *Buckley*, 509 U.S. at 278 (internal quotations and citations omitted). In *Buckley*, the Supreme Court held that prosecutorial press conferences, though perhaps necessary, are not entitled to absolute immunity, which is meant only to prevent the hampering of job performance by prosecutors due to fear of liability, and only applies "fairly within [the prosecutor's] function as an advocate." *Id*. at 273.

The qualified immunity defense protects "[g]overnment officials performing discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Government officials are "generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The Supreme Court has made clear that the "driving force" behind the creation of the qualified immunity doctrine was a desire to ensure that "insubstantial claims against government officials [will] be resolved prior to discovery." *Anderson v. Creighton*, 483 U.S. 635, 640, n.2 (1987) (internal citation omitted). Qualified immunity provides "immunity from suit rather than a mere defense to liability." *Robbins v. Becker*, 715 F.3d 691, 693 (8th Cir. 2013) (internal quotation omitted). Defamation is not recoverable in a *Bivens* action. *See Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

Taking the facts of Plaintiffs' Complaint as true, Defendants' press release stated that Plaintiffs were accused of operating "a large scale prostitution ring that exploited numerous individuals including minors." (Doc. 14, p.32). All Plaintiffs admitted that minors were involved, as that fact was contained within each of their PSRs, and all objections related to the minors' involvement were either resolved or withdrawn, with the PSRs

adopted by the Court. Further, the statements did not violate any clearly established constitutional or statutory right. The Court finds that the press conference statements were clearly part of an administrative duty, which was incidental to the performance of the Prosecutors' duties as advocates. They are therefore of such a character that the attachment of qualified immunity is appropriate.

## IV. Conclusion

Plaintiffs' Complaint fails to allege facts sufficient to remove the cloak of absolute and qualified immunity from Defendants regarding their actions as advocates in pursuing criminal charges against Plaintiffs and in making statements to the press.

Accordingly, **IT IS ORDERED** that Defendants' Separate Motions to Dismiss (Docs. 36, 38, 40, 42, 44, 46, and 48) are **GRANTED**. Therefore, Separate Defendants Conner Eldridge, Kyra E. Jenner, Tracy A. Triplett, Christopher Plumlee, Kenneth Elser, Deborah F. Groom, and Candace L. Taylor are **DISMISSED WITH PREJUDICE**. All further pleadings filed herein shall reflect the dismissal of the parties as stated. The claims against Separate Defendants Janet L. Ploudre, Grant Edwards, Ronald Scamardo, Beth Phillips, the United States, and Unknown United States Marshalls have not been dismissed by this Order.

**IT IS FURTHER ORDERED** that Separate Defendant Conner Eldridge, Tracy A. Triplett, Kyra E. Jenner, and Christopher Plumlee's Motion to Substitute the United States for Individual Named Defendants (Doc. 34) and Defendants' Motion for Entry of Dismissal as to Tiffney R. Fedele (Doc. 61) are **DENIED AS MOOT**.

**IT IS SO ORDERED** this 19th day of November, 2014.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE